1 **WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Michael E. Tennenbaum, | No. CV-10-2137-PHX-GMS |
| Plaintiff, | **ORDER** |
| vs. | |
| Arizona City Sanitary District; Francis J. Slavin PC; Francis J. Slavin, Carol J. Slavin, | |
| Defendants. | |

Pending before the Court are the following: (1) Motion to Dismiss (Doc. 9) filed by Defendants Francis J. Slavin PC, Francis J. Slavin, and Carol J. Slavin (collectively "Slavin Defendants"); (2) Motion for Summary Judgment declaring A.R.S. § 12-752 unconstitutional (Doc. 13) filed by Plaintiff Michael E. Tennenbaum; and (3) Motion for Attorneys' Fees and Costs under A.R.S. § 12-752 (Doc. 18) filed by Tennenbaum. For the reasons discussed below, all three motions are denied.

**BACKGROUND**

Plaintiff was the principal of Arizona City Development Corporation ("ACDC"), which was the developer of a real estate community known as "Arizona City," located in Pinal County, Arizona. The City has approximately 4,500 permanent residents. The Arizona City Sanitary District ("District"), a political subdivision of the State, is governed by and through a Board of Directors (the "Board"). Pursuant to an Effluent Disposal Agreement

entered in 1979, the District provides reclaimed water for the irrigation of the community's golf course and other community amenities in exchange for the developer's operation and maintenance of the community's public or semi-public facilities, including a golf course, lake, racquet club, and park. On or about April 7, 1998, ACDC was liquidated and Plaintiff became the successor to ACDC.

Defendant Francis Slavin, an attorney with the firm Francis J. Slavin PC, is legal counsel for the District and its Board. The Board consists of five elected members, one of whom is the Chairman. At the time the present cause of action arose, Mr. William Miller was the Chairman. Mr. Slavin represented the District in an earlier lawsuit filed by the District against Arizona City Golf, LLC and AM Golf, LLC in Pinal County challenging the validity of the 1979 Effluent Disposal Agreement. Apparently, the three majority members of the Board disagreed with the two minority members regarding the lawsuit. As a result of these disagreements, two recall elections – taking place in May 2009 and May 2010 – were aimed at the three-member majority. Slavin also represented the three majority Board members that were the subject of the recall elections in a lawsuit that was filed in Pinal County in an effort to stop the May 2010 recall. Neither recall election was successful in displacing the three Board members. A general election was scheduled for November 2, 2010.

The present lawsuit arises out of allegedly defamatory statements made by Slavin in his capacity as legal counsel for the District/Board. Plaintiff alleges that Mr. Slavin drafted a letter, dated December 30, 2009, which was printed on District letterhead and signed by Mr. Miller in his capacity as Chairman of the Board. The letter was mailed, with Defendants' knowledge, to all customers of the District by including a copy in their monthly billing statement. Plaintiff alleges that the letter "contains false statements about plaintiff, and (i) brings plaintiff into disrepute, contempt or ridicule, and/or (ii) impeaches plaintiff's honesty, integrity or reputation." (Doc. 1, ¶ 9). Plaintiff contends that the letter, among other things, falsely accuses him of profiteering and gouging. (*Id*. at ¶ 12). The letter was subsequently published twice by the Arizona City Independent TriValley newspaper on January 13, 2010 and January 20, 2010. (Doc. 1, Ex. 3, 4). Plaintiff believes that at least one,

or perhaps both, of the newspaper publications were produced at the direction, advice, and/or with the knowledge of Slavin. (Doc.1, ¶ 23). Plaintiff further asserts that Slavin, with the approval and/or at the direction of the Board, made the same or similar statements at an open forum held at a Board meeting on January 20, 2010. (*Id.* at ¶ 29).

Plaintiff commenced this defamation action against the District and the Slavin Defendants on October 6, 2010, alleging that Defendants are liable for defamation per se. (Doc. 1). The Slavin Defendants move to dismiss the complaint pursuant to A.R.S. § 12-752, Arizona's SLAPP ("Strategic Lawsuits Against Public Participation") statute. (Doc. 9). Plaintiff challenges the constitutionality of Arizona's SLAPP statute through a motion for summary judgment (Doc. 13) and seeks an award of attorneys' fees pursuant to the statute (Doc. 18).

**DISCUSSION**

**I. Slavin Defendants' Motion to Dismiss**

The Slavin Defendants move to dismiss Plaintiff's suit on grounds that it constitutes a SLAPP suit within the meaning of A.R.S. § 12-752. A SLAPP suit is one in which the plaintiff's alleged injury results from petitioning or free speech activities by a defendant that are protected by the federal or state constitution. The first step in evaluating an anti-SLAPP motion is to determine whether the statements at issue involve an exercise of the right of petition, as defined by the statute. *See* § 12-752(A) ("In any legal action that *involves a party's exercise of the right of petition*, the defending party may file a motion to dismiss the action under this section." (emphasis added)); *see also Zamos v. Stroud*, 87 P.3d 802, 806 (Cal. 2004) (in the context of California's broader statute, the party filing the anti-SLAPP motion has the initial burden of establishing that the plaintiff's claim arose from protected activity). Thus, to qualify for protection under the statute, Slavin's written or oral statements must "fall[] within the constitutional protection of free speech," and (1) "[be] made as part of . . . [a] recall effort", § 12-751(1), and/or (2) "[be] made before or submitted to a legislative or executive body or any other governmental proceeding", "in connection with an issue that is under consideration or review" by that body or proceeding, and "for the

purpose of influencing a governmental action, decision or result," § 12-751(1)(a)-(c). *See Backus v. State*, 220 Ariz. 101, 104, 203 P.3d 499, 502 (2009) (Arizona courts apply "fundamental principles of statutory construction, the cornerstone of which is the rule that the best and most reliable index of a statute's meaning is its language and, when the language is clear and unequivocal, it is determinative of the statute's construction." (quoting *Deer Valley Unified Sch. Dist. No. 97 v. Houser*, 214 Ariz. 293, 296, 152 P.3d 490, 493 (2007)) (internal quotation marks omitted)).

### A. Recall Effort

Defendants contend that "the ongoing dispute between the Board and the developer has led to repeated recall efforts," and "[t]he letter to District customers and the subsequent informational Board meeting both on their face and as admitted in the Complaint relate to a matter under consideration before the Board, i.e., possible modification of the developer/District contract." (Doc. 9 at 5). Defendants ask the Court to consider Slavin's letter and presentation as part of a recall effort because the ongoing dispute between the Board and the developer, which was the subject of the lawsuit, is what led to the repeated recall efforts. Nevertheless, neither the content of the letter nor any description afforded of the content of the presentation support such an inference. The letter makes no mention of any recall. Rather, the opening line of the letter states: "[t]his letter is intended to clear up the misconception surrounding the current lawsuit between the Arizona City Sanitary District and Arizona City Golf." (Doc. 1, Ex. 1). According to Slavin's own affidavit, "[t]he letter was to report to the District's taxpayers the acts of the Developer which breached the Developer's obligations and the District's position and expectations under the Agreement. It also was in response to the continued criticism and misinformation being leveled at the Board by golf course lot owners, organized by the golf course owner in opposition to the Lawsuit." (Doc. 9, Ex. E, ¶ 19).[1] Mr. Miller's admitted testimony further confirms that from

---

[1] The Court overrules Plaintiff's evidentiary objection to paragraph 19 of Slavin's affidavit on grounds that it lacks foundation, contains inadmissible hearsay and violates the

- 4 -

his perspective the purpose of the letter was to "educate" the District's customers about the lawsuit. (Doc. 16, Ex. 2 at 137).

Similarly, with respect to the presentation, Slavin admits that it was the same one made in 2009 during oral arguments before the Pinal County Superior Court in *Arizona City Sanitary District v. Arizona City Golf, LLC*. (Doc. 9, Ex. E, ¶ 14). Slavin states that the presentation dealt with "the history of the Agreement between the District and [ACDC], which is the subject of the Lawsuit" and that "[t]he presentation included the sell-off of various recreational amenities by the Developer, Michael Tennenbaum, and by AM Golf, a company owned by his sons." (Doc. 9, Ex. E, ¶¶ 14, 21).[2] To the extent Slavin contends that the lawsuit between the District and Arizona City Golf concerning the Agreement is what led to the two recall elections, Defendants have not made an adequate showing that the statements are entitled to protection as "part of . . . [a] recall effort" pursuant to the statute.

The statements at issue were made in late December 2009, and mid-January 2010. Three to four months later, on April 16, 2010, the Court of Appeals in *Arizona City Sanitary Dist. v. Olson* held that the petitioners who sought a second recall election of the three Board members were required to pay the costs of the prior unsuccessful May 2009 recall election before filing a petition for the second recall, which was eventually held on May 18, 2010. 224 Ariz. 330, 334, 230 P.3d 713, 717 (App. 2010). Thus, it is not apparent that any recall was pending when the statements were made in December 2009 and January 2010. Slavin presents no evidence that a second recall effort was underway at the time the statements were made. Even if he did, however, this Court need not decide whether any preparatory work for a recall that may have been anticipated at the time of the statements satisfies the "recall

---

Best Evidence Rule. (Doc. 15, ¶ 8). Slavin, in his capacity as legal counsel to the Board/District, drafted the letter. It is reasonable then to assume that he had a sufficient basis on which to state the letter's purpose.

[2] Plaintiff's evidentiary objection to paragraph 14 of Slavin's affidavit (Doc. 15, ¶ 5) is inapposite because the Court only relies on the statement to the extent that it demonstrates that Slavin's own description of the presentation fails to make any mention of a recall effort.

- 5 -

effort" requirement of the statute.

To assume, as Slavin urges, that the mailed letter and the use of District resources to make a presentation at a public meeting were part of a recall effort would be to assume that the statements took place under circumstances that violate provisions of an Arizona statute. Section 16-192(A) of the Arizona Revised Statutes provides, in relevant part, that "[a] special taxing district shall not use its personnel, equipment, materials, buildings or other resources for the purpose of influencing the outcome of an election."[3] It is undisputed that the letter was included as part of the monthly invoice mailed to all the Sanitary District's customers. (Doc. 9, Ex. E, ¶ 18). Moreover, Slavin does not dispute that he was acting in his capacity as legal counsel to the Board and District and that he was remunerated for the activities he undertook in that capacity, including drafting the letter and making the presentation. *See* Doc. 9 at 3 ("All of his actions at issue in the Complaint were taken as counsel for the Board/District, with the services paid for by the Board/District."). Therefore, assuming *arguendo* that the Court accepted Defendants' argument that the letter and/or presentation were part of a recall effort, this would amount to a concession by Defendants that the District used its materials and resources to influence the outcome of the May 2010 recall election, thereby violating A.R.S. § 16-192(A).

In their Reply, Defendants assert that Plaintiff has overlooked the portion of A.R.S. § 16-192 which provides, "[n]othing in this section precludes a special district from reporting on official actions of the special district's governing body." (Doc. 19 at 5). Defendant also relies on A.R.S. § 48-2011, which delineates the powers of a sanitary district to include the following: "a sanitary district, acting through its board of directors" may "[s]ue and be sued" and "[m]anage and conduct the business and affairs of the district, and do all other things incidental to exercising the powers granted by this article." Defendants, however, cannot

---

[3] A.R.S. § 16-192(D) provides that "[t]his section applies only to special taxing districts that are organized pursuant to title 48, chapters 5, 6, 8, 10 and 13 through 16." Defendants do not dispute that the District is organized under title 48, chapter 14 of the Arizona Revised Statutes.

- 6 -

have it both ways. Slavin offers no evidence that the District took any official action with respect to the recall election. Indeed, Mr. Miller's admitted testimony provides that none of the other Board members were aware that the letter would be submitted with the bills. (Doc. 16, Ex. 2 at 225). Thus, the mailing was not an "official action" of a governing body or the management of the District's affairs "through its board of directors", as required by the two statutes Defendants rely on in their Reply. Even assuming the Board took an official position on the recall election, the statute would still prohibit any official attempt by the Board to influence the election through the use of District resources.

The SLAPP statute cannot be invoked by a defendant who uses District resources to influence an election in violation of A.R.S. § 16-192. Slavin makes no argument that the prohibition in A.R.S. § 16-192 on the use of a special taxing district's resources to influence an election is unconstitutional. If, as Slavin seems to concede, such a prohibition is appropriate, then the prohibited speech in which Miller and Slavin allegedly engaged does not "fall[] within the constitutional protection of free speech." *See, e.g.*, *Flatley v. Mauro*, 139 P.3d 2, 24 (2006) (holding that activity forming the basis of defendant's SLAPP motion was extortion as a matter of law, and therefore not constitutionally protected pursuant to California's SLAPP statute); *Huntingdon Life Sci., Inc. v. Stop Huntingdon Animal Cruelty U.S.A., Inc*., 129 Cal. App. 4th 1228, 1246, 29 Cal. Rptr. 3d 521, 535 (Cal. Ct. App. 2005) ("If the defendant *concedes* or the evidence *conclusively establishes* the conduct complained of was illegal, as a matter of law the defendant cannot make a prima facie showing the action arises from protected activity within the meaning of [California's SLAPP statute]."). To qualify as an "exercise of the right of petition" pursuant to Arizona's SLAPP statute, the statement at issue must "fall[] within the constitutional protection of free speech." § 12-751(1). Accordingly, if Slavin's activities violate A.R.S. § 16-192, and that prohibition is constitutional, it follows that Defendants cannot be protected by the constitutional guarantee of the right of petition when Slavin's speech violated that legal prohibition.

### B. Statements Before Governmental Body

Defendants further assert that Slavin's activities qualify as an exercise of the right of

petition because they were "activit[ies] done before or in connection with any political subdivision of the state." (Doc. 9 at 5). Defendants thus argue that the statute has a breadth which is belied by its narrow statutory language. To qualify as an exercise of the right of petition, it is not sufficient for the statements at issue to simply "arise[] directly from matters under consideration by the District", as Defendants assert. (Doc. 9 at 5). Rather, the statute requires an oral or written statement that falls within the constitutional protection of free speech *and that is all of the following*: (1) "[m]ade before or submitted to a legislative or executive body or any other governmental proceeding," (2) "[m]ade in connection with an issue that is under consideration or review by a legislative or executive body or any other governmental proceeding," and (3) "[m]ade for the purpose of influencing a governmental action, decision or result." §12-751(1)(a)-(c) (emphasis added). The statute defines "governmental proceeding" as "any proceeding, other than a judicial proceeding, by an officer, official or body of this state and any political subdivision of this state, including boards and commissions, or by an officer, official or body of the federal government." § 12-751(2).

Assuming as Defendants have argued that the letter and presentation were made in connection with the lawsuit and the possible modification of the agreement between the developer and the District, an issue which could reasonably be viewed as "under consideration or review" by the Board, the statements still fail to satisfy the first and third prongs of the definition. The letter was mailed to all of the District's customers as part of their monthly bill. The presentation was made during the "call-to-the-public" segment of the Board's regularly scheduled meeting, and, according to Slavin's affidavit, "almost all" in attendance were homeowners. (Doc. 9, Ex. E, ¶¶ 21, 22). Indeed, Slavin admits that the Board had already heard the presentation during an Executive Session of the Board in December 2009. (*Id*. at ¶ 17). The statements were not, therefore, made before or submitted to a legislative, executive or other governmental proceeding.

Moreover, neither the letter nor the presentation were "made for the purpose of influencing a governmental action, decision, or result." It is not disputed that Slavin's

- 8 -

statements were made at the direction of the District (i.e. the government) in order to defend against what it perceived as criticisms for actions it had already taken, not in order to influence an action, decision or result of the District itself. When the Arizona legislature adopted the SLAPP statute in 2006, it explicitly declared:

> It is in the public interest and it is the purpose of this article to strike a balance between the rights of persons to file lawsuits for injury and the constitutional rights of persons of petition, speech and association, to protect and encourage public participation in government to the maximum extent allowed by law, to establish an efficient process for identification and adjudication of strategic lawsuits against public participation and to provide for costs and attorney fees.

A.R.S. § 12-751, Sec. 2(C). When the legislature accomplishes that balancing by specifying criteria that must be met to invoke the protections of the statute, this Court has no authority to re-write or re-state the criteria. The statements at issue are not the type for which the legislature provided protections. Because the statute unambiguously provides that all three elements of the definition must be met and Defendants have only arguably satisfied one prong, Slavin's challenged activities fall beyond the scope of the SLAPP statute's protection.

The Slavin Defendants have failed to meet their threshold burden of showing that Plaintiff's defamation claims are based on protected petitioning activity. Accordingly, their motion to dismiss pursuant to the SLAPP statute is denied.[4]

**II.     Plaintiff's Motion for Attorneys' Fees Pursuant to A.R.S. § 12-752**

Section 12-752(D) of the SLAPP statute provides that "[i]f the court grants the motion to dismiss, the court shall award the moving party costs and reasonable attorney fees, including those incurred for the motion." Alternatively, "[i]f the court finds that a motion to

---

[4] In the context of the second step of the analysis, the statute provides that "[a]t the request of the moving party the court shall make findings whether the lawsuit was brought to deter or prevent the moving party from exercising constitutional rights and is thereby brought for an improper purpose, including to harass or to cause unnecessary delay or needless increase in the cost of litigation." § 12-752(B). Because the Court does not have the opportunity to assess the factual and/or legal basis, if any, underlying Slavin's statements, speculating about whether Plaintiff's filing of this lawsuit was motivated by improper purposes would be futile.

dismiss is frivolous or solely intended to delay, the court shall award costs and reasonable attorney fees to the prevailing party on the motion." Plaintiff moves for an award of attorneys' fees and costs by asserting that Defendants' motion to dismiss was frivolous because the statute does not apply on its face. (Doc. 18). While Defendants have failed to demonstrate that Slavin's activities fall within the scope of the statute, the argument was not frivolous. That Arizona's SLAPP statute, which was enacted in 2006, has been the subject of only one unpublished case[5] is a factor the Court may consider in its attorneys' fee determination. In Reply, Plaintiff relies on *Hollowell v. Va. Marine Res. Comm'n*, 691 S.E.2d 500, 510 n.11 (Va. Ct. App. 2010), to argue that Defendant should not be given a "free pass" simply because the statute has never been addressed in a reported decision. (Doc. 26 at 1–2). However, the Court looks to the Arizona courts for guidance on determination of attorneys' fees awards in cases involving issues of first impression.

In the context of contested contract actions, Arizona courts have determined that whether a case involves issues of first impression can be a useful factor to consider, although it need not be determinative. *Associated Indem. Corp. v. Warner*, 143 Ariz. 567, 570, 694 P.2d 1181, 1184 (1985) (finding that novelty of legal question presented and whether such claim or defense had previously been adjudicated in this jurisdiction are among the factors that are useful to consider in determining whether attorneys' fees should be awarded); *Loftus v. Ariz. State Univ. Pub. Safety Pers. Ret. Sys. Local Bd.*, __P.3d. __, ¶ 21, 2011 WL 1814234, *6 (App. 2011) (denying attorneys' fees awards where issue raised was one of first impression, claim was not without merit, and award of fees could discourage others from litigating legitimate claims). Accordingly, the Court takes into consideration not only the fact that the issue raised by Defendants was one of first impression, but also that while

---

[5] *Varela v. Perez*, 2009 WL 4438738, *1 (D. Ariz. Nov. 30, 2009) (finding that a crime victim defendants' report of criminal activity to the police does not qualify as a "petition to the government" as that term is used in A.R.S. §12-751). Although mentioned in *Congress Elementary Sch. Dist. No. 17 of Yavapai Cnty. v. Warren*, 227 Ariz. 16, __ n.3, 251 P.3d 395, 397 n.3 (App. 2011), the Court of Appeals declined to reach the SLAPP issue in that case because of resolution of the appeal based on public records law.

1 Defendants' arguments were not persuasive, they were not wholly unreasonable. The Court
2 is not persuaded that Defendants' motion is frivolous[6] or that the sole intent behind the
3 motion was to delay the pending litigation. In consideration of all of these factors, Plaintiff's
4 request for attorneys' fees is denied.

**III.     Plaintiff's Motion for Summary Judgment**

As part of his arguments against Defendants' Motion to Dismiss, Plaintiff challenges the constitutionality of Arizona's SLAPP statute through a separately filed motion for summary judgment. (Doc. 13). Plaintiff argues that the statute is in violation of the "anti-abrogation" (article 18, § 6), due process (article 2, § 4), and/or separation of powers (article 3) clauses of the Arizona constitution. Arizona courts follow a longstanding principle of "avoid[ing] addressing constitutional issues relating to a statute unless absolutely necessary to resolve a case." *Jeter v. Mayo Clinic Ariz.*, 211 Ariz. 386, 403 n.23, 121 P.3d 1256, 1273 n.23 (App. 2005); *see also Aitken v. Indus. Comm'n of Ariz.*, 183 Ariz. 387, 389, 904 P.2d 456, 458 (1995) ("[I]t is well-settled that the constitutionality of a statute will not be determined in any case, unless such determination is absolutely necessary in order to determine the merits of the suit in which the constitutionality of such statute has been drawn in question, and such rule should not be departed from except for strong reason and under extraordinary circumstances." (citing *Cnty. of Maricopa v. Anderson*, 81 Ariz. 339, 341, 306 P.2d 268, 269 (1957))). Having dismissed Defendants' Motion to Dismiss pursuant to § 12-752 for failure to establish that the activity at issue is within the scope of Arizona's SLAPP

---

[6] In their Motion to Dismiss, Defendants accuse Plaintiff of bringing his defamation action "coincidentally, less than a month before the latest recall election, in an obvious effort to deter Defendants and others from exercising their legitimate First Amendment and political rights as to the ongoing dispute between the developer and the Board." (Doc. 9 at 4). In their Reply, Defendants change their position by recognizing that the election, which was scheduled to take place a few weeks after Plaintiff filed his Complaint, was the November 2010 general election, not a recall election which would be significant under the SLAPP statute analysis. Nevertheless, this clear shift in Defendants' position with respect to Plaintiff's intent behind filing the suit is not sufficient to render the entirety of Defendants' motion frivolous.

statute, it becomes unnecessary, and therefore inappropriate, for the Court to address the constitutionality of the statute. *See Lee v. Walters*, 433 F.3d 672, 677 (9th Cir. 2005) (holding that a district could should not have considered constitutionality of a state statute where exclusion order could be reviewed and affirmed without reaching constitutionality). A determination on the constitutionality of the SLAPP statute would not entitle Plaintiff to relief beyond that which he may be entitled on his claims. Moreover, neither party has disclosed any extraordinary circumstances to urge the Court against exercising judicial restraint to address constitutional questions in advance of the necessity of deciding them. Accordingly, Plaintiff's motion for summary judgment on the constitutionality of A.R.S. 12-752 is denied.

**IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss (Doc. 9) is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Attorneys' Fees (Doc.18) is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Summary Judgment (Doc. 13) is **DENIED**.

DATED this 29th day of July, 2011.

G. Murray Snow
United States District Judge