WO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

Michael E. Tennenbaum,

    Plaintiff,

v.

Arizona City Sanitary District, et al.,

    Defendants.

No. CV-10-02137-PHX-GMS

**ORDER**

    Pending before the Court are the Objections to the Magistrate Judge's Recommended Disposition of the Cross-Motions for Summary Judgment on Insurance Coverage by Plaintiff Michael Tennenbaum. (Doc. 243.) For the following reasons, the Court grants the motion in part and denies the motion in part. The Court orders that the "Order" entered by Magistrate Judge Mark E. Aspey (Doc. 242) shall be designated a Report and Recommendation (R & R). The Court adopts the R & R in part and rejects it in part.

## BACKGROUND

    Plaintiff Michael Tennenbaum sued Defendants Arizona City Sanitary District, Francis J. Slavin PC, Francis J. Slavin, and Carol J. Slavin for libel, slander, and false light invasion of privacy. (Doc. 1.) American Guarantee & Liability Insurance Company ("American Guarantee"), which insured Francis J. Slavin PC and Francis J. Slavin (hereafter, collectively, "Slavin"), defended the lawsuit under a reservation of rights. (Doc. 222, Exh. 3 at 1, 8). Slavin's attorney informed American Guarantee that if it did

not settle the case, Slavin and Tennenbaum planned to enter a *Morris* agreement[1] to settle the case and stipulate to the judgment. (*Id.*, Exh. 3 at 2, 25). American Guarantee did not settle. Slavin and Tennenbaum entered a *Morris* agreement pursuant to which the Court entered judgment against Slavin for $900,000 and Tennenbaum agreed not to collect any part of the judgment from Slavin, but rather to "attempt to recover and collect the Judgment solely and exclusively against American Guarantee." (Doc. 208.)

Tennenbaum filed an application for a writ of garnishment and summons to American Guarantee (Doc. 209), which the Court issued. (Doc. 210.) The Court held a status conference and referred the matter to Magistrate Judge Mark E. Aspey "for all further proceedings." (Doc. 220.) Tennenbaum and American Guarantee filed cross-motions for summary judgment, Tennenbaum seeking to enforce the judgment against American Guarantee, and American Guarantee denying liability as a matter of law under the terms of its contract with Slavin. The magistrate judge held oral argument (Doc. 239) and entered an order denying both parties' motions. (Doc. 242.) Tennenbaum timely filed an objection to what he termed the magistrate judge's "recommended disposition of the cross-motions for summary judgment." (Doc. 243.)

This Court has jurisdiction pursuant to 28 U.S.C. § 636(b).

## DISCUSSION

### I. Legal Standard

The Federal Magistrates Act, 28 U.S.C. § 631 et seq., "distinguishes between nondispositive matters under 28 U.S.C. § 636(b)(1)(A) and dispositive matters heard pursuant to 28 U.S.C. § 636(b)(1)(B)." *United States v. Abonce-Barrera*, 257 F.3d 959, 968 (9th Cir. 2001). "Under 28 U.S.C. § 636(b)(1)(A), a district judge may designate a magistrate judge to hear any *nondispositive pretrial* matter pending before the court." *Estate of Connors v. O'Connor*, 6 F.3d 656, 658 (9th Cir. 1993) (emphasis in original). Regarding pretrial matters heard by a magistrate judge, the Federal Magistrate Act

---

[1] *United Servs. Auto. Ass'n v. Morris*, 154 Ariz. 113, 741 P.2d 246 (1987).

provides, in pertinent part:

> [A] judge may designate a magistrate to hear and determine any pretrial matter pending before the court, except a motion for injunctive relief, for judgment on the pleadings, for summary judgment, . . . to dismiss for failure to state a claim upon which relief can be granted, and to involuntarily dismiss an action.

28 U.S.C. § 636(b)(1)(A).

Pursuant to section 28 U.S.C. § 636(c), dispositive motions can be decided by a magistrate judge only "[u]pon special designation by the district court and with the consent of the parties." *Estate of Connors*, 6 F.3d at 658. Absent party consent, a district judge may nonetheless authorize a magistrate judge to "conduct hearings, including evidentiary hearings, and to submit to a judge of the court proposed findings of fact, and recommendations for disposition" of dispositive motions. 28 U.S.C. § 636(b)(1)(B). "The primary difference between subsections 1(A) and 1(B) is that the former allows the magistrate to 'determine' the matter (subject to the review of the district court for clear or legal error) while the latter allows the magistrate only to submit 'proposed findings and recommendations' for the district court's *de novo* review." *Reynaga v. Cammisa*, 971 F.2d 414, 416 (9th Cir. 1992).

Here, the parties did not consent to have their cross-motions for summary judgment decided by a magistrate judge. Therefore, the magistrate judge was only authorized to *recommend* denial of the motions, subject to this Court's *de novo* review. *Id.* at 417 ("[An] order was beyond the magistrate's authority: it was beyond his jurisdiction and was, in essence, a legal nullity."). As such, the Court regards the magistrate judge's "order" as a Report and Recommendation and conducts *de novo* review.

The Court grants summary judgment when the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In making this determination, the Court views the evidence "in a light most favorable to the non-moving party." *Warren v. City of Carlsbad,* 58 F.3d 439, 441 (9th Cir. 1995). Where the parties have filed cross-motions

for summary judgment, the Court "evaluate[s] each motion independently, 'giving the nonmoving party in each instance the benefit of all reasonable inferences.'" *Lenz v. Universal Music Corp.*, 801 F.3d 1126, 1130-31 (9th Cir. 2015) (quoting *ACLU v. City of Las Vegas,* 333 F.3d 1092, 1097 (9th Cir. 2003)). "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

The party opposing summary judgment "may not rest upon the mere allegations or denials of [the party's] pleadings, but . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *see Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986); *Brinson v. Linda Rose Joint Venture*, 53 F.3d 1044, 1049 (9th Cir. 1995). Substantive law determines which facts are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "A fact issue is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002) (quoting *Anderson*, 477 U.S. at 248). Thus, the nonmoving party must show that the genuine factual issues "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Cal. Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987) (quoting *Anderson*, 477 U.S. at 250).

**II. Analysis**

**A.** *Morris* **Agreements**

The settlement agreement between Tennenbaum and Slavin stipulates that Slavin did not act intentionally or maliciously. (Doc. 226, Exh. F at 5.) Nonetheless, this stipulated fact is not binding on American Guarantee. *Quihuis v. State Farm Mut. Auto. Ins. Co.*, 235 Ariz. 536, 538, 334 P.3d 719, 721 (2014); *United Servs. Auto. Ass'n v.*

*Morris*, 154 Ariz. 113, 741 P.2d 246 (1987).

In *Morris*, the Arizona Supreme Court held that an "insurer's insertion of a policy defense by way of reservation or nonwaiver agreement narrows the reach of the cooperation clause [in an insurance contract] and permits the insured to take reasonable measures to protect himself against the danger of personal liability," and therefore "an insured being defended under a reservation of rights may enter into [a settlement agreement establishing the insured's liability to the claimant] without breaching the cooperation clause" as long as the agreement is "made fairly, with notice to the insurer, and without fraud or collusion on the insurer."  154 Ariz. at 119.

When a claimant and an insured defendant enter a *Morris* agreement, "the binding effect of stipulated facts depends on whether they prove the liability of the insured or the insurer."  *Groth v. Owners Ins. Co.*, No. CV-12-1846-PHX-SMM, 2014 WL 2194801, at *3 (D. Ariz. May 27, 2014).  "If a stipulated fact establishes an element of coverage, it is not binding upon the insurer if the consent judgment could be sustained without that fact."  *Id.*; see also *Morris*, 154 Ariz. at 120 ("[A]ny stipulation of facts essential to establishing coverage would be worthless," and thus a claimant who enters into a *Morris* agreement with an insured "accept[s] the risk that the insureds' actions would be found intentional within the meaning of the exclusion, in which case he would have no source from which to recover.").  "[W]hen an injured party obtains a default judgment against an insured pursuant to a *Damron* or *Morris* agreement, that judgment will bind the insurer in a coverage case as to the existence and extent of the insured's liability."  *Quihuis*, 235 Ariz. at 546-47, 334 P.3d at 729-30.  "[H]owever, the judgment will not preclude the insurer from litigating its identified basis for contesting coverage, irrespective of any fault or damages assessed against the insured."  *Id.* at 547, 334 P.3d at 730.

Although an insurer has the right to litigate coverage, it does not have "an absolute right to relitigate all aspects of the liability case, including liability and amount of damages," as such relitigation "would destroy the purpose served by allowing insureds to enter into [*Morris*] agreements because claimants would never settle with insureds if they

never could receive any benefit." *Morris*, 154 Ariz. at 120. On the other hand, "an insured being defended under a reservation might settle for an inflated amount or capitulate to a frivolous case merely to escape exposure or further annoyance," and indeed might be "quite willing to agree to anything as long as plaintiff promised [the insured] full immunity." *Id.* Therefore, "neither the fact nor amount of liability to the claimant is binding on the insurer unless the insured or claimant can show that the settlement was reasonable and prudent." *Id.* "The indemnitee need not establish, however, that he would have lost the case; he need only establish that given the circumstances affecting liability, defense and coverage, the settlement was reasonable." *Id.* "The test as to whether the settlement was reasonable and prudent is what a reasonably prudent person in the insureds' position would have settled for on the *merits* of the claimant's case." *Id.* at 121.

Here, for the purposes of the parties' cross-motions for summary judgment, the reasonableness and prudence of the settlement is not at issue because the parties dispute the preliminary issue of coverage. American Guarantee asserts that Slavin's acts are excluded from coverage under the policy as a matter of law; whereas Tennenbaum asserts that Slavin's policy provides coverage, as a matter of law.

### B. Slavin's Policy Exclusions

#### 1. Purported Ambiguity in Slavin's Policy

Tennenbaum asserts that the language of Slavin's insurance policy is ambiguous, and that therefore it must be construed against American Guarantee in favor of coverage. (Doc. 243 at 7.)

Under Arizona law, "[p]rovisions of insurance policies are to be construed in a manner according to their plain and ordinary meaning." *Sparks v. Republic Nat. Life Ins. Co.*, 132 Ariz. 529, 534, 647 P.2d 1127, 1132 (1982). Where a clause is ambiguous, it should be interpreted "by looking to legislative goals, social policy, and the transaction as a whole." *First Am. Title Ins. Co. v. Action Acquisitions, LLC*, 218 Ariz. 394, 397, 187 P.3d 1107, 1110 (2008). "If an ambiguity remains after considering these factors," the

ambiguity is construed against the insurer. *Id.* "[T]he general rule is that while coverage clauses are interpreted broadly so as to afford maximum coverage to the insured, exclusionary clauses are interpreted narrowly against the insurer." *Scottsdale Ins. Co. v. Van Nguyen*, 158 Ariz. 476, 479, 763 P.2d 540, 543 (App. 1988). "[T]he insurer bears the burden to establish the applicability of any exclusion." *Keggi v. Northbrook Prop. & Cas. Ins. Co.*, 199 Ariz. 43, 46, 13 P.3d 785, 788 (App. 2000).

Slavin's insurance policy provides coverage for damages and "claim expenses," (Doc. 222, Exh. 1 at 5,) defined in part as "fees, costs and expenses charged by attorneys retained or approved by the Company for a Claim for Personal Injury brought against an Insured." (*Id.* at 11.) "Personal Injury" is defined as "an allegation of libel, slander, violation of a right of privacy, false arrest, detention, imprisonment, wrongful entry, eviction, malicious prosecution or abuse of process arising from the rendering of Legal Services for others unless deemed uninsurable under the law pursuant to which this policy shall be construed." (*Id.* at 12.) Intentional acts are excluded from coverage under the policy. (*Id.* at 6.)

Tennenbaum asserts that the policy is ambiguous because "intentional, willful and/or malicious conduct are essential elements of the torts of false imprisonment, abuse of process, [and] malicious prosecution," such that "while on the one hand, Slavin's policy provides coverage for these intentional torts, on the other hand, it purports to deny coverage for these same torts through the intentional acts exclusion." (Doc. 243 at 7.) Tennenbaum argues that this "internal inconsistency" renders the entire intentional acts exclusion ambiguous such that the contract must be construed in favor of coverage. (*Id.*) This argument is not persuasive for two reasons.

First, the argument has no bearing on the torts for which Slavin is liable to Tennenbaum. Under Arizona law, defamation can be an intentional, reckless, or negligent act. *Peagler v. Phoenix Newspapers, Inc.*, 114 Ariz. 309, 315, 560 P.2d 1216, 1222 (1977). False light invasion of privacy, a tort which is distinct from defamation under Arizona law, can be intentional or reckless. *Godbehere v. Phoenix Newspapers,*

*Inc.*, 162 Ariz. 335, 340, 783 P.2d 781, 786 (1989). As such, there is no ambiguity regarding the policy's coverage of defamatory acts: they are covered, except when the acts are intentional (or when one of the other delineated exclusions applies). Even if Slavin's policy could be considered ambiguous regarding false imprisonment and other necessarily intentional torts, any such ambiguity would not affect the issue of Slavin's coverage for defamation and false light invasion of privacy.

Second, intentional wrongdoing is uninsurable under Arizona law. *Transamerica Ins. Grp. v. Meere*, 143 Ariz. 351, 356, 694 P.2d 181, 186 (1984) ("[P]ublic policy . . . forbids contracts indemnifying a person against loss resulting from his own willful wrongdoing . . . [in order to] prevent an insured from acting wrongfully with the security of knowing that his insurance company will 'pay the piper' for the damages."). Even when an insurance policy is truly ambiguous, it cannot be construed to provide coverage for intentional acts of wrongdoing. *Wilshire Ins. Co. v. S.A.*, 224 Ariz. 97, 99-100, 227 P.3d 504, 506-07 (App. 2010).

The Court therefore holds as a matter of law that Slavin's policy unambiguously excludes intentional acts from its coverage of defamation and false light invasion of privacy.

### 2. "Actual Malice" versus Intent and/or Maliciousness

The insurance policy Slavin purchased from American Guarantee provides that American Guarantee will cover "Damages and Claim Expenses because of a Claim . . . based on an act or omission in the Insured's rendering or failing to render Legal Services for others." (Doc. 222, Exh. 1 at 5.) However, the policy excludes from coverage:

> any Claim based upon or arising out of . . . any intentional, criminal, fraudulent, malicious, or dishonest act or omission by an Insured; except that this exclusion shall not apply in the absence of a final adjudication or admission by an Insured that the act or omission was intentional, criminal, fraudulent, malicious, or dishonest.

(*Id.* at 6.)

In the underlying case, Slavin moved for summary judgment on the grounds that "[t]he statements upon which Tennenbaum's causes of action are based are not, as a

matter of law, defamatory." (Doc. 171 at 1.) The Court denied the motion, holding as a matter of law that the statements were "capable of bearing a defamatory meaning" and leaving to the fact-finder the issue of whether the statements were in fact defamatory. (Doc. 192 at 6-10) (quoting *Yetman v. English*, 168 Ariz. 71, 79, 811 P.2d 323, 331 (1991)).

The Court also held that Tennenbaum is a limited-purpose public figure. (Doc. 192 at 16) ("Tennenbaum did not address ACSD's argument that he is a limited-purpose public figure and that the matter in question was a matter of public concern. . . . The Court therefore assumes that ACSD is correct."). As a public figure, Tennenbaum had the heightened standard of proving at trial that Slavin acted with "actual malice." (*Id.*) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255-56 (1986)). Because "actual malice" is an element of the claim that Tennenbaum would have had to prove at trial had he not entered into the *Morris* agreement with Defendants, the *Morris* agreement and stipulated judgment conclusively establish that Slavin acted with "actual malice." The judgment cannot be sustained without that fact. *Cf. Groth*, 2014 WL 2194801, at *3.

Nonetheless, the established fact that Slavin acted with "actual malice" does not establish that his act was "intentional" or "malicious" under the terms of the insurance policy. A statement is made with "actual malice" in defamation law when it is made "with knowledge that it was false or with reckless disregard of whether it was false or not." *New York Times Co. v. Sullivan*, 376 U.S. 254, 279-80 (1964). "Actual malice" is a term of art and an unfortunate misnomer—it is unrelated to the ordinary meaning of malice as ill will. *See, e.g.*, *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 510 (1991) ("Actual malice under the *New York Times* standard should not be confused with the concept of malice as an evil intent or a motive arising from spite or ill will."); *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 666 n.7 (1989) ("The phrase 'actual malice' is unfortunately confusing in that it has nothing to do with bad motive or ill will."); *Selby v. Savard*, 134 Ariz. 222, 228, 655 P.2d 342, 348 (1982) (differentiating between "actual malice" and the separate concept of "common-law malice—spite and ill

1   will"). Neither maliciousness nor intent to harm is a necessary element of defamation
2   with "actual malice." *See Selby*, 134 Ariz. at 225-26 (finding defamation with "actual
3   malice" where defendant "had actual knowledge of the probable falsity of the allegations
4   and published them with, at the very least, reckless disregard of whether they were true or
5   false").

6   "In order to constitute 'intent' in an intentional acts exclusion . . . , the insured
7   must desire to harm the plaintiff." *Transamerica Ins. Grp. v. Meere*, 143 Ariz. 351, 359,
8   694 P.2d 181, 189 (1984). "The presumption that a person intends the ordinary
9   consequences of his voluntary actions, used in determining responsibility for the
10  consequences of [a] voluntary act, has no application to the interpretation of terms used
11  in insurance contracts." *Farmers Ins. Co. of Arizona v. Vagnozzi*, 138 Ariz. 443, 449,
12  675 P.2d 703, 709 (1983). "[T]he trier of fact must inquire into the actor's subjective
13  intent." *Id.* "An act may be so certain to cause a particular injury that the intent to cause
14  the harm is inferred as a matter of law"—"[f]or example, punching someone in the face
15  with a fist." *Id.* But summary judgment is inappropriate where the question of
16  "[w]hether the injury was the intended result of [the insured's] act or whether the act
17  constituted negligent or grossly reckless conduct is a matter upon which reasonable
18  minds can differ." *Id.* at 450.

19  Here, reasonable minds could differ as to whether Slavin's acts of defamation with
20  "actual malice"—that is, with knowledge that the statements were false or with reckless
21  disregard of whether or not they were false—were done with the intention of harming
22  Tennenbaum and/or done with ill will. "The facts in this case are undisputed, but from
23  those undisputed facts different inferences can be drawn." *Id.* at 449. Whether Slavin's
24  acts were intentional and/or malicious is an open question of fact,[2] and therefore, the
25  Court denies both parties' cross-motions for summary judgment.

---

27  [2] Slavin's Declaration asserting that he did not intend to hurt Tennenbaum and had no
    malice toward him, (Doc. 222, Exh. 3,) when viewed in the light most favorable to
28  American Guarantee, fails to meet the burden of making "a prima facie showing that no
    issue of material fact exists for trial" on the issue of Slavin's subjective intent. *City of
    Phoenix v. Space Data Corp.*, 111 Ariz. 528, 528-29, 534 P.2d 428, 428-29 (1975).

### C. Disingenuousness

American Guarantee argued in its cross-motion for summary judgment that Tennenbaum's position that Slavin did not intend to injure him "contradicts the allegations that Tennenbaum made against Slavin throughout the underlying litigation." (Doc. 226 at 13.) The magistrate judge interpreted this argument as urging the application of the doctrine of judicial estoppel. (Doc. 242 at 19.) The magistrate judge "decline[d] to invoke the doctrine," but nonetheless asserted in *dicta* that "Plaintiff's present assertions can certainly be characterized as disingenuous." (*Id.* at 21-22.) Tennenbaum objects. (Doc. 243 at 3-5.)

"Judicial estoppel, sometimes also known as the doctrine of preclusion of inconsistent positions, precludes a party from gaining an advantage by taking one position, and then seeking a second advantage by taking an incompatible position." *In re Hoopai*, 581 F.3d 1090, 1097 (9th Cir. 2009) (quoting *Whaley v. Belleque,* 520 F.3d 997, 1002 (9th Cir. 2008) (quoting *Rissetto v. Plumbers & Steamfitters Local 343,* 94 F.3d 597, 600 (9th Cir. 1996))). "It is an equitable doctrine invoked by a court at its discretion." *Id.* (quoting *New Hampshire v. Maine,* 532 U.S. 742, 750 (2001) (quoting *Russell v. Rolfs,* 893 F.2d 1033, 1037 (9th Cir. 1990))). Judicial estoppel "is intended to protect the integrity of the judicial process by preventing a litigant from playing fast and loose with the courts." *Id.* (quoting *Whaley v. Belleque*, 520 F.3d 997, 1002 (9th Cir. 2008) (quoting *Wagner v. Prof'l Eng'rs in Cal. Gov't,* 354 F.3d 1036, 1044 (9th Cir. 2004))). In determining whether to apply the doctrine, a court "typically consider[s] (1) whether a party's later position is clearly inconsistent with its original position; (2) whether the party has successfully persuaded the court of the earlier position, and (3) whether allowing the inconsistent position would allow the party to derive an unfair advantage or impose an unfair detriment on the opposing party." *Id.* (quoting *United States v. Ibrahim,* 522 F.3d 1003, 1009 (9th Cir.2008) (quoting *New Hampshire v. Maine,* 532 U.S. at 750-51)).

///

1    The magistrate judge began with the premise that "Plaintiff vigorously argued in defending against the motions for [summary judgment] before Judge Snow that Defendant's statements were defamatory and that, even under a heightened pleading standard, Plaintiff could present sufficient evidence to a jury that the statements were made with malice," and that this Court adopted Tennenbaum's view "that the statements could be found to be malicious." (Doc. 242 at 20.) This is an incorrect premise. Tennenbaum maintained that he could prove that the statements were made with *actual malice*, this Court held that the statements could be found to be defamatory with *actual malice*, and the Morris agreement conclusively determines that the statements were made with *actual malice*. As discussed earlier in this Order, a determination that the statements were made with "actual malice" is not determinative as to the present question of whether the statements were made maliciously (with ill will) or intentionally (with intent to harm). *Masson*, 501 U.S. at 510 ("Actual malice under the *New York Times* standard should not be confused with the concept of malice as an evil intent or a motive arising from spite or ill will."); *Harte-Hanks*, 491 U.S. at 666 n.7 (1989) ("The phrase 'actual malice' is unfortunately confusing in that it has nothing to do with bad motive or ill will.").

Tennenbaum did plead in his Complaint that "Slavin's and the District's conduct was gross, wanton, malicious and oppressive, and showed spite, ill-will and reckless indifference to the interest of others." (Doc. 1 at 7). However, he pled in the alternative that "Slavin and the District: (i) knew that the Letter contained false Statements; and/or (ii) acted with reckless disregard or negligence in failing to ascertain the truth of the Statements." (*Id.*) It is well established that a party may plead in the alternative, and such pleading does not suggest bad faith or disingenuousness. Federal Rule of Civil Procedure 8(d) specifically provides:

> (**2**) *Alternative Statements of a Claim or Defense.* A party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones. If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient.
> (**3**) *Inconsistent Claims or Defenses.* A party may state as many separate claims or defenses as it has, regardless of consistency.

- 12 -

Moreover, the Ninth Circuit has recognized that the demands of litigation often necessitate pleading in the alternative:

> At the time a complaint is filed, the parties are often uncertain about the facts and the law; and yet, prompt filing is encouraged and often required by a statute of limitations, laches, the need to preserve evidence and other such concerns. In recognition of these uncertainties . . . ***we allow pleadings in the alternative—even if the alternatives are mutually exclusive***. As the litigation progresses, and each party learns more about its case and that of its opponents, some allegations fall by the wayside as legally or factually unsupported. ***This rarely means that those allegations were brought in bad faith*** or that the pleading that contained them was a sham. Parties usually abandon claims because, over the passage of time and through diligent work, they have learned more about the available evidence and viable legal theories, and wish to shape their allegations to conform to these newly discovered realities. We do not call this process sham pleading; we call it litigation.

*PAE Gov't Servs., Inc. v. MPRI, Inc.*, 514 F.3d 856, 858-59 (9th Cir. 2007) (emphasis added).

It is difficult to know another person's subjective intentions, and it is reasonable for a plaintiff to plead in the alternative that a defendant behaved intentionally, recklessly, or negligently—and then following a *Morris* agreement, to assert against the insurer that the insured acted without intent to harm.[3]  Indeed, the plaintiff in *Morris* alleged that the insured parties had injured him intentionally.  154 Ariz. at 115, 741 P.2d at 248.  The Arizona Supreme Court did not factor that pleading into its detailed analysis but rather held that the parties were "free to litigate the facts of the coverage defense."

---

[3] *See Fuisz v. Selective Ins. Co. of Am.*, 61 F.3d 238, 244-45 (4th Cir. 1995) ("Notwithstanding [plaintiff's] repeated allegations that [defendant] "willfully intended to injure," by also pleading that [defendant] acted with actual malice [plaintiff] has left open the possibility of another avenue of recovery if it is unable to establish [defendant's] intent to harm [plaintiff's] reputation. If the evidence at trial fails to establish that [defendant] intentionally harmed [plaintiff], the complaint permits [plaintiff] nonetheless to prevail on its claims by proving that [defendant] intended no harm, but acted with reckless disregard for the falsity of his statements. [Insurer] concedes that the intentional acts exclusion does not apply to such a claim."); *cf. Safeguard Scis., Inc. v. Liberty Mut. Ins. Co.*, 766 F. Supp. 324, 333 (E.D. Pa. 1991) *aff'd in relevant part, rev'd in part,* 961 F.2d 209 (3d Cir. 1992) *for text, see* No. 91-1480, 1992 WL 12915247, at *3-4 (3d Cir. Mar. 19, 1992). (holding that although complaint only alleged "intentional slander," insured should not be denied coverage on basis of intentional acts exclusion because complaint could be amended to conform to proof at trial of lesser intent).

1  *Id.* at 121, 741 P.2d at 254. Manifestly, the plaintiff was free to take the position that the
2  insured parties had *not* intended to injure him, notwithstanding his earlier pleading to the
3  contrary.

4  A plaintiff is not "disingenuous" for advancing a position inconsistent with one of
5  the alternative pleadings in the plaintiff's complaint. This "would undermine the clear
6  intent of the Federal Rules of Civil Procedure, which explicitly authorize litigants to
7  present alternative and inconsistent pleadings." *Molsbergen v. United States*, 757 F.2d
8  1016, 1019 (9th Cir. 1985).

## CONCLUSION

10  The provision of Slavin's insurance policy excluding intentional and malicious
11  acts does not render the policy ambiguous as to its coverage of acts of defamation and
12  false light invasion of privacy. A genuine dispute exists as to the material fact of Slavin's
13  subjective intent, and therefore the Court accepts the magistrate judge's recommendation
14  to deny the parties' cross-motions for summary judgment.

15  Tennenbaum's current position that Slavin did not act with an intention to harm
16  him or with malice is not "disingenuous."

17  **IT IS THEREFORE ORDERED** that the Objections to the Magistrate Judge's
18  Recommended Disposition of the Cross-Motions for Summary Judgment on Insurance
19  Coverage by Plaintiff Michael Tennenbaum (Doc. 243) are **GRANTED IN PART AND**
20  **DENIED IN PART**.

21  / / /
22  / / /
23  / / /
24  / / /
25  / / /
26  / / /
27  / / /
28  / / /

1    **IT IS FURTHER ORDERED** that the "Order" entered by Magistrate Judge Mark E. Aspey (Doc. 242) shall be designated a Report and Recommendation and shall be **ACCEPTED BUT NO DISINGENOUSNESS WILL BE PRESUMED RESULTING THEREFROM**.

Dated this 1st day of December, 2015.

*[signature: G. Murray Snow]*

Honorable G. Murray Snow
United States District Judge